UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

TIMOTHY DURLEY,

                Plaintiff,

v.                                                       Case No. 21-cv-281-pp

KYLE TRITT,
and JOSEPH FALKE,

                Defendants.

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2), SCREENING COMPLAINT UNDER 28 U.S.C. §1915A AND DISMISSING CASE**

      Timothy Durley, an inmate at Waupun Correctional Institution who is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants denied him pens, magazines and snacks while he was in administrative confinement. This decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 2, and screens his complaint, dkt. no. 1.

**I.    Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 2)**

      The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was a prisoner when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA allows the court to give a prisoner plaintiff the ability to proceed with his case without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the prisoner must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then must pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

On March 2, 2021, the court ordered the plaintiff to pay an initial partial filing fee of $3.49. Dkt. No. 4. The court received that fee on March 22, 2021. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay the remainder of the filing fee over time in the manner explained at the end of this order.

**II.     Screening the Complaint**

    A.     <u>Federal Screening Standard</u>

Under the PLRA, the court must screen complaints brought by prisoners seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). <u>See</u> <u>Cesal v. Moats</u>, 851 F.3d 714, 720 (7th Cir. 2017) (citing <u>Booker-El v. Superintendent, Ind. State Prison</u>, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, "accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u> (citing <u>Twombly</u>, 550 U.S. at 556).

2

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.    The Plaintiff's Allegations

The complaint alleges that on January 14, 2021, the plaintiff was placed on "administrative confinement in segregation." Dkt. No. 1 at 2. The plaintiff asserts that before he was placed on administrative confinement, supervisor Capt. Kyle Tritt told the plaintiff that he would not be placed on administrative confinement "in program in the north cell hall with other inmates who will be on [administrative confinement] as [the plaintiff would be], because due to [his] assault on staff;" rather, the plaintiff would be placed "down here in segregation on B, Range Upper." Id. The plaintiff says he asked Tritt whether the plaintiff would "receive everything that the other [administrative confinement] inmates will be able to have on [administrative confinement]." Id. Tritt allegedly responded, "yes, [the plaintiff would]," and said that Tritt had talked to the security director, Joseph Falke. Id.

The plaintiff asserts that when he was placed on administrative confinement on January 14, 2021, he received his television and fan "as other [administrative confinement] inmates would receive." Id. at 2-3. But the plaintiff says that he did not get his writing pens, magazines or "canteen food

3

items such as chips–candy–cakes–etc even though [he] attempted to ordered [sic] these items 2 times." Id. at 3. The plaintiff says he wrote different staff members about this, including Tritt and Falke. Id. He says that the reply he received (he does not say from who) was that he "would not be able to receive these items due to the range [he was] on in segregation," and that he would need to be "on program in the north cell hall with the other [administrative confinement] inmates." Id.

The plaintiff notes that inmates in segregation are supposed to be on C Range, but that because of construction on the Behavioral Health Unit, inmates in the BHU are housed on C Range. Id. Administrative confinement inmates "on program" are in the north cell hall. Id.

The plaintiff asked Tritt and Falke why he could not "go to program" with the other administrative confinement inmates. Id. They told him that because of his assault on staff and his history, the doors "on program in the north cell hall" open regularly at random, and staff did not want to risk putting [the plaintiff] over there." Id.

The plaintiff says he is suing the defendants "at their fullest capacity [and] individually for violation of [his] 14th Amendment, equal rights [and] 8th Amendment deliberate indifference [and] my 14th Amendment discrimination." Id. He seeks compensatory and punitive damages. Id. at 4. He also requests that the defendants resign from working at Waupun and that he be relocated to the North Cell Hall with the other inmates on administrative confinement. Id.

    C.    Analysis

The plaintiff says he is suing the defendants in their "fullest capacity." The court assumes that the plaintiff means that he is trying to sue the defendants in their *official* capacities. Suing a prison official in his official

4

capacity is another way of suing the entity that the official represents or for which the official works. Kentucky v. Graham, 473 U.S. 159, 165 (1985) (citing Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 690, n.55 (1978)). The plaintiff alleges that Tritt and Falke are employees of the Wisconsin Department of Corrections (DOC) and that they work at Waupun. The court construes the claims against the defendants in their official capacities as claims against the Department of Corrections, the agency for which they work. Graham, 473 U.S. at 165–66. Because claims against the DOC are "no different from a suit against the State itself," the court must treat those claims as if the plaintiff had brought them against the State of Wisconsin. See Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989) (citing Graham, 473 U.S. at 165-66; Monell, 436 U.S. at 690 n.55). But a state is not a "person" against whom the plaintiff may recover monetary damages under §1983. Lapides v. Bd. of Regents of the Univ. Sys. of Ga., 535 U.S. 613, 617 (2002); Williams v. Wisconsin, 336 F.3d 576, 580 (7th Cir. 2003).

The plaintiff seeks money damages, but he also wants to be relocated to a different part of the prison and wants the defendants to resign from their positions at Waupun. The court does not have the authority to direct the DOC to fire its employees or to force the employees to resign. Nor does the court have the authority to order an inmate to be housed in a certain part of an institution. See Johnson v. Eckstein, No. 18-CV-1696-PP, 2019 WL 4540279, at *4 (E.D. Wis. Sept. 19, 2019) (citing Westefer v. Neal, 682 F.3d 679, 683 (7th Cir. 2012) (noting that the PLRA "enforces a point repeatedly made by the Supreme Court in cases challenging prison conditions: [P]rison officials have broad administrative and discretionary authority over the institutions they manage" (internal quotation marks omitted)); and Capoeria v. Pollard, No. 16-

5

CV-224, 2016 WL 1452398, at *4 (E.D. Wis. Apr. 13, 2016) (noting that plaintiff's request for a transfer "is highly intrusive to the inner workings of the prison system and would tread upon the DOC's authority over running their institution")).

This means that the only relief available to the plaintiff is money damages. Because a citizen cannot obtain money damages from the state (the defendant in an official capacity claims), the plaintiff may not proceed against the defendants in their official capacities. He may pursue his claims against the defendants only in their individual capacities. The court will dismiss the plaintiff's official capacity claims.

The plaintiff asserts a claim under the Equal Protection Clause of the Fourteenth Amendment. The Equal Protection Clause provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const., amend. XIV, §1. The Equal Protection Clauses protects against arbitrary discrimination "unrelated to the character of the activity allegedly discriminated against." Reed v. Faulkner, 842 F.2d 960, 962 (7th Cir. 1988). To prevail on an equal protection claim, an incarcerated person must prove that: 1) similarly situated incarcerated persons have been treated differently; and 2) there is no rational relation between the dissimilar treatment and any legitimate penal interest. See May v. Sheahan, 226 F.3d 876, 882 (7th Cir. 2000) (citing Hudson v. Palmer, 468 U.S. 517, 523 (1984), and Williams v. Lane, 851 F.2d 867, 881–82 (7th Cir. 1988)).

The plaintiff alleges that the defendants required him to serve his administrative confinement on the B Range, Upper Level, because he assaulted staff members and because of his "history." He says that other inmates on administrative confinement are housed in the North Cell Hall, where they

6

receive the items that he did not receive. When the plaintiff asked the defendants why he was not housed in the North Cell Hall, the defendants told him it was for the safety of staff given the plaintiff's behavior. The defendants told him that because the doors on the North Cell Hall regularly open at random, it would not be safe to house the plaintiff there.

The plaintiff has not alleged that he was treated differently than other *similarly situated* incarcerated persons. It is not enough for the plaintiff to allege that some incarcerated persons got pens, magazines and snacks while he did not—he must allege that those other persons were *similarly situated* to him. In other words, he must allege that there were other incarcerated persons who were on administrative confinement in segregation, who had assaulted staff and who had a history like the plaintiff's, but who were allowed to have pens, magazines and snacks. The plaintiff has not alleged facts to support the first element of an equal protection claim.

Even if the plaintiff had alleged the first element of an equal protection claim, his own facts imply that he cannot allege the second element—that there was no rational relationship between treating him differently and any legitimate penal interest. Protecting staff is a legitimate penal interest. Kaufman v. McCaughtry, 419 F.3d 678, 683 (7th Cir. 2005) ("Prison officials unquestionably have a legitimate interest in maintaining institutional security.") Housing the plaintiff in a more restrictive segregation unit to protect staff because of his history of assaulting staff is a legitimate penal interest that justifies treating him differently than other incarcerated persons. The complaint does not state a claim that the defendants violated the plaintiff's right to equal protection by housing him in restrictive conditions.

The plaintiff also seeks to proceed under the Eighth Amendment. The Eighth Amendment protects against "deprivations of essential food, medical care, or sanitation" and "other conditions intolerable for prison confinement." Rhodes v. Chapman, 452 U.S. 337, 348 (1981)). An Eighth Amendment claim consists of both objective and subjective components. Farmer v. Brennan, 511 U.S. 825, 834 (1994). To satisfy the objective component, an incarcerated person must show that he "is incarcerated under conditions posing a substantial risk of serious harm." Id. The subjective component of an Eighth Amendment violation requires the incarcerated person to demonstrate that the official acted with the requisite intent, that is, that he had a "sufficiently culpable state of mind." Id. A prison official shows deliberate indifference when he "realizes that a substantial risk of serious harm to a prisoner exists, but then disregards that risk." Perez, 792 F.3d at 776 (citing Farmer, 511 U.S. at 837).

The plaintiff has not stated facts to demonstrate either component of an Eighth Amendment claim. He alleges he was denied pens, magazines and snacks while in segregation. He does not explain how denying him these items posed "a substantial risk of serious harm" to his health or safety or deprived him of an essential need. He does not explain how depriving him of these items subjected him to intolerable conditions. So he has not demonstrated the first, objective component of an Eighth Amendment claim—that he was incarcerated under conditions that posed a substantial risk of serious harm. For that reason, he also has not stated facts supporting the second, subjective element of an Eighth Amendment claim—that Tritt and Falke realized that the plaintiff was at risk of substantial harm but disregarded that risk. Because the plaintiff has not alleged that a risk of substantial harm existed, he cannot show that

Tritt and Falke knew of that risk but disregarded it. The court will not allow the plaintiff to proceed on an Eighth Amendment claim.

Because the conditions the plaintiff describes did not deprive him of his rights under the Fourteenth or Eighth Amendments, he has not stated a claim for relief that a federal court may grant. Although courts generally allow civil plaintiffs at least one opportunity to amend their pleadings, the court need not do so where the amendment would be futile. See Boyd v. Bellin, 835 F. App'x 886, 889 (7th Cir. Feb. 10, 2021). The plaintiff's complaint is thorough in its allegations describing his claim. The court finds that allowing him to amend would be futile.

## III. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **ORDERS** that this case is **DISMISSED** under 28 U.S.C. §§1915(e)(2)(B) and 1915A(b)(1) because the complaint fails to state a claim. The court will enter judgment accordingly.

The Clerk of Court will document that the plaintiff has incurred a "strike" under 28 U.S.C. §1915(g).

The court **ORDERS** that the agency that has custody of the plaintiff must collect from his institution trust account the **$346.51** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the clerk of court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the

transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the Warden at Waupun Correctional Institution.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within thirty days of the entry of judgment. <u>See</u> Fed. R. of App. P. 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the thirty-day deadline. <u>See</u> Fed. R. App. P. 4(a)(5)(A).

Under limited circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within twenty-eight days of the entry of judgment. The court cannot extend this deadline. <u>See</u> Fed. R. Civ P. 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. <u>See</u> Fed. R. Civ. P. 6(b)(2).

The court expects parties to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated at Milwaukee, Wisconsin this 27th day of April, 2021.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**